## Commonwealth ex rel. v. McFadden

D. W. Bechtel and R. W. Freiler, for petitioner.

A. D. Knittle, for respondent.

HICKS, P. J., April 30, 1934.—On September 23, 1923, John McFadden and Anna McFadden, his wife, were married in the Borough of Port Carbon, and as

a result of their union three children were born, two boys and a girl. Their respective ages are: John McFadden, 9 years; Edward McFadden, 8 years; and Eleanor McFadden, 6 years. They continued to live together until October 10, 1932, when the relator left the respondent. Since their separation, the children and the respondent have been living together, and at the time of the hearing were living in an apartment at no. 210 North Centre Street in the City of Pottsville, while the relator is rooming in a lodging house at no. 511 North Centre Street in the same city.

On January 8, 1934, the relator presented his petition for a writ of habeas corpus to show cause why the respondent should not be relieved of the custody and care and possession of the children and they be delivered into the custody of the relator, their father. In the petition, he attacks the fitness of the mother, the respondent, to have the care and custody of the children; avers that the atmosphere of the apartment wherein they are lodged is not a fit and proper place for them because of the behavior of the mother, that she is frequently out at all hours of the night in company with other men, drinking and dancing, and entertaining them at the apartment, where lewd and immoral acts are indulged in, and that when she is out the children are frequently left at home alone at night.

A hearing was had on the petition on February 26, 1934, and evidence was presented on behalf of the relator tending to show that the respondent mother drank to excess on several occasions, frequented saloons and beer gardens, and that on one occasion while she and two other women were entertaining two men in her apartment, all of them being under the influence of drink, she danced in the nude before the company. It may be definitely concluded that this mother drank to excess and did for a time during 1933 sell beer in her apartment to a very restricted number of men and women. She admits that she has been at several drinking places at night, but her explanation is that she was watching her husband, whom she charges with improper relations with his boarding mistress, while, on the other hand, he charges that he was watching her.

All irregularities were denied by the respondent and her witnesses, except that she acknowledged that she did drink and that, upon infrequent occasions, men came to her apartment. She says that although her husband was under an order of this court to pay her $90 a month for the support of herself and three children, his noncompliance compelled her to sell beer in order to gain some support, but that she only did this for a month or two, and that for a period of 5 or 6 months prior to the hearing there were no parties in her apartment. This is uncontradicted.

The charge of perjury which was brought against the respondent by the boarding mistress of the relator, although justified, may be explained upon the theory that she charged the relator's boarding mistress with being responsible for her marital trouble.

The relator at the time of the hearing represented to the court through his counsel that he desired these children to be placed in the St. Francis Orphanage which, at least, was an acknowledgment of his inability to care for them and that custody should not be awarded to him. He represented that he would pay the maintenance and support of the three children at this institution, but if his promise was as well performed as his compliance with the support orders of this court then the cost of maintenance would not be paid by him. The court is of the opinion that both parties have been guilty of very serious indiscretions

and have not conducted themselves properly. Their conduct raises very serious suspicions as to their social integrity.

Ordinarily, a child of tender years will be committed to the custody of its mother, but this rule is not a rigid one and is not observed where the welfare of the child is not promoted by adherence to it: Commonwealth v. Addicks et ux., 5 Binn. 520; Commonwealth ex rel. v. Keller, 90 Pa. Superior Ct. 357; Commonwealth ex rel. v. Stark, 94 Pa. Superior Ct. 86. Section 2 of the Act of June 26, 1895, P. L. 316, provides that in disputes of this character the court shall decide which, if either, parent shall have the custody of the child "regard first being had to the fitness of such parent and the best interest and permanent welfare of said child." The paramount consideration is the welfare of the child: Commonwealth ex rel. v. Daubert, 24 Schuyl. 409; Commonwealth ex rel. v. White, 29 Schuyl. 291; Commonwealth v. Aransky, 24 Schuyl. 62.

We have been very much impressed by the testimony of both the respondent and the relator relative to the type of training which this mother, even though guilty of indiscretions, has given her three children. Mrs. Mortimer, our female probation officer, two school teachers, and others acquainted with the home of the respondent and her children, all testified to the exceptionally good behavior of the children. They are always well dressed and clean. The two older ones regularly attend school, their deportment is excellent, and their scholastic standing good. Our female probation officer testified that these children are always called into the house for the night between 6:30 and 7:00 p. m., and that this mother has enough influence with the children to teach them right from wrong. The evidence shows that when the parties were held in the apartment the children were not there, and that they have not been cognizant of anything debasing. The testimony also preponderates that she did not leave these children alone at night but always had a responsible party to look after them. We believe that this mother has done a very good job with these children, notwithstanding her own delinquencies, which she says have now ended for a period of 5 or 6 months. Of course, she cannot continue such conduct and expect to retain these children, but we are not persuaded that they should be taken from her influence, as it is exerted upon them, and committed to an artificial motherhood in the form of institutional care, no matter how excellent the institution may be. The children were in court, and the court observed them and was much impressed by their appearance, their demeanor, and their affection for their mother. We will retain this proceeding, and should this mother again hold drinking parties in her apartment, indiscreetly conduct herself in and without the home, and frequent places with or without men, since she is a married woman, we will then consider a modification of the order which we will make in this case and relieve her of their custody.

And now, April 30, 1934, the custody of John McFadden, Edward McFadden, and Eleanor McFadden is hereby awarded to their mother, Anna McFadden. This proceeding, however, is retained in order that an appropriate order may hereafter be made, should it become necessary, to secure the right of access and visitation to the children by the father, and for the further purpose of modifying or revoking this order should the mother hereafter improperly conduct herself.                    From M. M. Burke, Shenandoah, Pa.